IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>Steven R. Leivas and Robbin G. Leivas,<br><br>Debtor. | Chapter 13<br><br>Case No. 04-01315-PHX-SSC |
| Steven R. Leivas and Robbin G. Leivas,<br><br>Plaintiff,<br><br>v.<br><br>Raynold P. Simoes; and Russell A. Brown, Chapter 13 Trustee,<br><br>Defendants. | Adversary No. 04-00079<br><br>**MEMORANDUM DECISION**<br><br>(Opinion to Post) |

## **I. INTRODUCTION**

On January 26 and June 2, 2005, this Court conducted a trial on Raynold Simoes ("Simoes") Objection to Confirmation and the Debtors' objection to Simoes proof of claim. Simoes also filed a Motion for Relief from Stay, to which the Debtors responded. Additionally, the Debtors' filed a Complaint to have the liens held by the Defendant voided. On February 25, 2004 Simoes filed a Motion for Summary Judgment, which the Court denied, as set for in its August 17, 2004 Memorandum Decision.

The Court now sets forth its Decision. The Court has jurisdiction over this matter, and this is a core proceeding pursuant to 28 U.S.C. §§1334(b) and 157(b) (West 2005). To the extent necessary, the Court has set forth its findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 of the Rules of Bankruptcy Procedure.

## II. FACTUAL DISCUSSION

On January 27, 1998, the Debtors obtained financing from AM-COR Carpets, Inc.,[1] in the original principal amount of $25,251.00 and executed a promissory note ("Note") in connection therewith.[2] The parties do agree that Mr. Simoes is the successor in interest to AM-COR Carpets. There is no dispute between the parties that the financing was provided to the Debtors. However, Ms. Leivas testified at trial that she never executed any deed of trust or other document providing security to Am-Cor for the repayment of the indebtedness.[3] Because of Ms. Leivas' certainty that she had not executed this document, Am-Cor obtained an expert witness to review many documents presented at the trial of this matter.

The expert testified at length as to his qualifications and the procedures that he utilized to examine the documents, both originals and copies, that contained Ms. Leivas' signature. His obvious starting point was to examine a document that Ms. Leivas stated that she had signed. He also obtained various specimens which contained Ms. Leivas' original signature. He then carefully reviewed the documents that Ms. Leivas stated that she did not sign. The expert clearly had the background, training and experience to meet the test under the US Supreme Court Decision of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993). The scientific steps that he employed in analyzing and arriving at his conclusions were also clear and consistent with Daubert. Ultimately he was qualified as an expert, and

---

**1.** Mr. Simoes' predecessor in interest.

**2.** Exhibit A.

**3.** The Court does note that the promissory note, Exhibit A in evidence, does provide that it is secured by a lien on the Debtors' residence. As a result, one would anticipate that Ms. Leivas would question the provision; however, in this case, she testified that she did not focus on it. The Court questions the credibility of Ms. Leivas on this point. The Court concludes that given Ms. Leivas' profession, which is in the banking industry, she did see the provision and understand it, but the Court also concludes, as set forth hereinafter, that she did not execute any deed of trust or other document providing security to Am-Cor at that time. She probably thought that she was getting a great deal.

the Court accepts his opinion and conclusions as being necessarily critical in this Court's resolution of the disputed issues between the parties. *See* Fed. Rules Evid. Rule 702.

However, the Court then witnessed a surprising turn of events. During Mr. Leivas' testimony, he stated, for the first time, that he had forged his wife's signature on the deed of trust dated January 27, 1998 ("Deed of Trust"),which was executed shortly after the parties executed the Note.[4] Am-Cor was unaware of Mr. Levias' actions. From the testimony elicited, it appears that Mr. Leivas appeared before the notary public and signed his signature and printed his wife's signature in front of the notary. The notary then improperly filled out the acknowledgment, stating that Mr. and Ms. Leivas had appeared before her and executed the Deed of Trust.[5] Since Am-Cor was unaware of what Mr. Leivas had done, it nevertheless provided the funding to the Debtors.

The expert reviewed the Deed of Trust and separately concluded that someone other than Ms. Leivas had indeed printed her name on the Deed of Trust. The Court accepts the opinion of the expert and Mr. Leivas' admission and concludes that Mr. Leivas forged his wife's signature.

The Debtors subsequently obtained additional funding from Am-Cor and decided to modify the documents relating to the original loan transaction. The parties entered into an amended promissory note, dated July 1, 1998, ('Amended Note") whereby Am-Cor provided financing to the Debtors in the increased amount of $30,400,

---

**4.** Exhibit C. Mr. Leivas tried to downplay the effect of his actions by referring to what he did as signing his wife's signature without her authority. The reality is that he had no authority to sign for her, and he forged her signature on the document. The Court and counsel for both parties were naturally surprised by his admission on the witness stand. It is still unclear to the Court why he forged his wife's signature.

**5.** The notary public had no credible explanation for her actions.

- 3 -
Case 2:04-ap-00079-SSC    Doc 45    Filed 09/27/05    Entered 09/27/05 14:52:44    Desc
Main Document    Page 3 of 9

which included the original indebtedness in the principal amount of $24,251.00 .[6]
Indeed the original indebtedness was specifically incorporated into the Amended Note.
The new aggregate indebtedness was to be secured by a lien on the Debtors' residence.
Mr. Leivas and Ms. Leivas executed this Amended Note. The Amended Note was not
executed before a notary public, nor was it witnessed. Ms. Leivas did not recall
executing this document either. However, the expert opined that Ms. Leivas had
executed the Amended Note. The Court, based upon the evidence presented, accepts
the opinion of the expert and so concludes.

Two other documents were executed by the parties at the same time
as the Amended Note: a modification agreement, dated July 1, 1998 (Modification
Agreement) and a notice of modification, extension and renewal of deed of trust
(Notice), dated July 1, 1998 .[7] The Modification Agreement referred to the original
indebtedness that the Debtors agreed to repay in the Note. Unfortunately, several
documents were presented as being the Modification Agreement. Only one of the
documents had the signature of Ms. Leivas, the acknowledgment completed by the
notary, and the notary stamp placed on the document. However, this document did not
have the signature of any individual acting on behalf of Am-Cor. Again, Ms. Leivas
did not recall executing this document and believed it to be a forgery. The expert
testified extensively as to this document and concluded that Ms. Leivas had indeed
signed it. The Court accepts the testimony of the expert and so concludes.

As to the Notice, it appears that all parties - Mr. and Ms. Leivas and
Am-Cor - executed this document, which specifically incorporates the Deed of Trust
and states that the Deed of Trust is in full force and effect. There is one slight problem -
one of the signatures does not include the notary's stamp, although the acknowledgment
is properly completed. Again, Ms. Levias testified that she did not recall signing the

---

**6.** Exhibit F.

**7.** Exhibits D and E, respectively.

document and believed it was a forgery. The expert provided cogent evidence that Ms. Levias had indeed executed the Notice. The Court accepts the testimony of the expert and so concludes.

The parties have since been engaged in a dispute as to whether Simoes has any lien against the Debtors' residence. Simoes attempts to foreclose have been met with the Debtors' objection to claim and challenge to Simoes standing as having a secured claim in these proceedings which must be repaid in a plan of reorganization. Simoes naturally objects to confirmation of the Debtors' plan, since it is not being treated as a creditor with a secured claim which is only secured by the Debtors' principal residence and seeks vacatur of the automatic stay.[8]

### III. LEGAL DISCUSSION

A. Whether Simoes has a valid lien on the Debtors' residence based on the doctrine of ratification.

The parties have both cited the Court to the All Way Leasing decision in their trial memoranda in support of their respective positions. Arizona law does set specific constraints on the ability of one spouse to bind the other in certain transactions. Arizona law is clear that a document which transfers an interest in real property is not effective as to the marital community unless it is properly executed by both spouses. *See* A.R.S. § 25-214(C). However, All Way is also clear that under certain circumstances, although only one spouse executed a document relative to an interest in real property, the actions of the other spouse may be sufficient to support a claim of ratification. Obviously the Courts must review such situations carefully. To find that ratification has occurred because certain payments have been received may not be sufficient. However, Arizona Courts have also recognized that given the unequivocal actions of the non-signing spouse, a clear ratification has occurred. If the

---

**8.** If this Court finds that Simoes is a creditor with a secured claim which is only secured by the Debtors' principal residence, the Debtors may not modify said claim and must repay it pursuant to the provisions of Section 1322 of the Bankruptcy Code.

Case 2:04-ap-00079-SSC   Doc 45   Filed 09/27/05   Entered 09/27/05 14:52:44   Desc
Main Document    Page 5 of 9

1  non-signing spouse ratifies the transaction, the spouse, the non-signing spouse, and the
2  marital community will all be bound. All-Way Leasing, Inc. v. Kelly, 182 Ariz. 213
3  (Ariz. App. 1995) *citing* Kimball v. Statler, 20 Ariz. 81 (1918); Geronimo Hotel &
4  Lodge v. Putzi, 151 Ariz. 477 (1986).

5  The Court has reviewed the cases cited by the parties on this issue
6  and concludes that the facts are clear in this matter that when Ms. Leivas executed the
7  Amended Note, the Modification Agreement, and the Notice, she ratified the Deed of
8  Trust previously executed by only Mr. Leivas. Mr. Leivas, Ms. Leivas, and the marital
9  community were bound as of the date that the first Deed of Trust was executed.

10  The Debtors' counsel also argues that Am-Cor's failure to execute
11  the Modification Agreement somehow vitiates its effectiveness. However, Simoes, as
12  the successor in interest, is willing to abide by the terms and conditions of the
13  Agreement; it is the Debtors who argue that it has no force and effect. Under Arizona
14  law, Am-Cor may ratify the terms and conditions of the Modification Agreement, and
15  Simoes may then seek to enforce it. Under Arizona law, if a party adversely affected by
16  a transaction duly executes a related document, that party will be bound. *See* A.R.S. §
17  33-412(B). The parties to be bound, the Debtors, did execute the Modification
18  Agreement. The Debtor's argument on this point has no merit.

19  B. Whether Simoes has an equitable lien under Arizona law.

20  As previously noted, the Court has concluded that Simoes, as
21  successor in interest, may utilize the concept of ratification to validate its lien under
22  Arizona law. However, Simoes has also presented persuasive evidence that it has an
23  equitable lien. An equitable lien arises under Arizona law. Wolfswinkel v. Superior
24  Court, 145 Ariz. 154 (Ariz. App. 1984). Mr. Levias forged his wife's signature on the
25  Deed of Trust, misleading Am-Cor that it was obtaining a valid of deed of trust to
26  secure the money that it advanced. Mr. and Ms. Levias obtained the sum of $24,251.00
27  from Am-Cor initially, knowing that the Note should have been secured by a deed of
28  trust. The Debtors have continued to object to the validity of Simoes lien, as successor

in interest, when the evidence overwhelmingly reflects that they obtained subsequent funding from Am-Cor and ratified the earlier loan transaction. Such inequitable conduct on the Debtors' part warrants the granting of an equitable lien to Am-Cor to secure the indebtedness due and owing to it.

      C. Whether the Debtors may avoid Simoes lien based on Section 544 of the Bankruptcy Code.

The Debtors argue that once they filed their bankruptcy petition they were entitled to the strong arm powers of the bankruptcy trustee to avoid the lien of Simoes Section 544 provides as follows:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
>> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>>
>> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>>
>> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
>
> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

The Debtors or the bankruptcy trustee may utilize the Uniform Fraudulent Transfer Act as incorporated in Arizona law as the basis of any claim under Section 544. *See* 11 U.S.C. § 544 (b); <u>In re Southwest Supermarkets, LLC,</u> 325 B.R.

1    417 (Bankr..D.Ariz.2005); <u>In re Strasser</u>, 303 B.R. 841 (Bankr. D.Ariz. 2004). The

2    Debtors believe that, by assuming the status of a bona fide purchaser, they are now able

3    to avoid Am-Cor's lien. The Court does not disagree that Section 544 does afford

4    debtors to assume the powers of such a hypothetical bona fide purchaser. However, that

5    purchaser is subject to the defenses or claims which may defeat such a purchaser under

6    applicable law. <u>In re Professional Investment Properties of America</u>, 955 F.2d 623 (9th

7    Cir. 1992); <u>In re Harvey</u>, 222 B.R. 888 (9th Cir. 1988). In this matter, there is no

8    evidence of a failure to meet the Arizona filing requirements as to the Deed of Trust. It

9    appears to be properly executed by the Debtors, acknowledged, and recorded in the

10   appropriate place. Hence, the Deed of Trust meets all of the requirements set forth in

11   A.R.S. §§ 33-401 through 33-416. The purpose of the Arizona recording statutes is to

12   provide, first and foremost, notice to any purchaser or creditor as to the liens or

13   encumbrances against a particular parcel of real property. The purchaser or creditor

14   may then make an informed decision as to how to proceed with the transaction that may

15   affect the same real property. Under such circumstances, the hypothetical bona fide

16   purchaser would be placed on notice as to the lien of Am-Cor against the real property.

17   Having been placed on notice, further investigation would have reflected that the

18   original loan transaction, and the security provided therefor, were subsequently ratified

19   by the Debtors. There is no conceivable way that having been provided notice, the bona

20   fide purchaser could defeat the rights of Am-Cor. The Debtors' argument fails on this

21   point as well.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that Simoes, as successor in interest, has presented cogent evidence that he has a valid lien under Arizona law as a result of the Debtors' ratification of the original secured loan transaction. In the alternative, Arizona law would recognize that Simoes has an equitable lien on the property. The Debtors are unable to set aside Simoes lien based on

1  Section 544 of the Bankruptcy Code. Simoes objection to confirmation is sustained.
2  The Debtors must provide for Simoes' claim as secured, with the indebtedness being
3  secured only by a lien on the Debtors' principal residence. The Debtors' objection to
4  Simoes' proof of claim is overruled. Furthermore, the Motion for Relief from Stay is
5  denied. The Debtors can place the secured claim in the plan and proceed towards
6  confirmation. Simoes failed to meet his burden and made no showing at this trial that
7  considering all of the liens against the property, the Debtors had no equity in their
8  residence.

The Court will execute a separate order incorporating this Memorandum Decision.

DATED this 27th day of September, 2005.

*[signature]*

Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

BNC TO NOTICE